*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *MRS. J. and MR. J., individually and* ) | |
| *as parents and legal guardians* ) | |
| *of I.J., a minor,* ) | |
| ) | |
| *Plaintiffs* ) | |
| *v.* ) | *No. 2:15-cv-84-DBH* |
| ) | |
| *PORTLAND PUBLIC SCHOOLS,* ) | |
| ) | |
| *Defendant* ) | |

*MEMORANDUM DECISION AND ORDER ON*
*MOTION TO SUPPLEMENT THE RECORD*

Mrs. J. and Mr. J. (the "Parents"), who seek judicial review pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* of a hearing officer's decision pertaining to their child I.J., move to supplement the record with a report postdating the hearing and pertaining to a different student ("Student X"), which they argue rebuts and/or impeaches some of the evidence on which the hearing officer relied. *See* Plaintiffs' Motion To Permit Presentation of Additional Evidence ("Motion") (ECF No. 17) at 1-3; [Redacted] Report of Kimberly A. Heald, M.S. Ed, BCBA dated December 1, 2014 ("Heald Report") (ECF No. 18).

Defendant Portland Public Schools (the "District") objects to the proposed supplementation on the bases that the Heald report is irrelevant, inadmissible, and cumulative and that its admission would deprive the District of procedural safeguards. *See* Defendant's Objection to Plaintiffs' Motion To Permit Presentation of Additional Evidence ("Objection") (ECF No. 19) at 5-9. In the alternative, it requests that, if the court grants the Motion, the District be permitted to depose Heald and each of the witnesses whose testimony the plaintiffs allege the Heald Report rebuts or impeaches. *See id*. at 9-10. However, the District cautions that "an effective cross-

1

examination [of Heald] would also require the disclosure of personal information about Student X or other students" in the District program at issue, raising privacy concerns. *Id*. at 8 n.3.

The Parents assert that there is no privacy issue because they obtained permission from Student X's parents to use the redacted Heald Report in these proceedings. *See* Plaintiffs' Reply Memorandum in Support of Their Motion To Permit Presentation of Additional Evidence ("Reply") (ECF No. 22) at 4 n.5. They dispute that, if they were permitted to supplement the record with the Heald Report, any rebuttal testimony would be necessary, arguing that the District had the opportunity to address its staff's training and qualifications at hearing and that the report "amounts to an admission by an agent hired by Portland that some of the evidence Portland introduced in the administrative proceedings was not accurately portrayed to the hearing officer." *Id*. at 5.

For the reasons that follow, the Motion is denied.

## I.   Applicable Legal Standards

This action is brought pursuant to 20 U.S.C. § 1415, which provides, in relevant part, that a party aggrieved by the decision of a hearing officer with respect to the free public education provided to a disabled child may bring an action in federal court in which the court "shall hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C). The First Circuit has interpreted this statutory language to require a reviewing court to grant a party leave to present additional evidence only when that party presents "solid justification" for such supplementation of the record. *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 996 (1st Cir. 1990). It has elaborated:

> As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. To

2

> determine whether this burden has been satisfied, judicial inquiry begins with the administrative record.  A district court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id.* (citation and internal punctuation omitted).

> The First Circuit has observed:

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.  The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Town of Burlington v. Department of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985).  The Parents argue that the Heald Report concerns "relevant events occurring subsequent to the administrative hearing[,]" relates directly to the programming and placement options at issue in this proceeding, was not available during the due process hearing, and serves as impeachment and rebuttal evidence in view of factual assertions made by District witnesses at hearing.  Motion at 4 (quoting *Burlington*, 736 F.2d at 790).

## II.   Factual Background

I.J. is a 14-year-old student with a complex disability profile and set of educational needs.  Complaint (Injunctive Relief Requested) ("Complaint") (ECF No. 1) ¶ 9; Answer (ECF No. 12) ¶ 9.  She has been diagnosed with Pervasive Developmental Disorder, Moderate Intellectual Disability, anxiety disorder, attention deficit disorder (combined type), hyperactivity disorder, gastroesophageal reflux disease, poor weight gain, juvenile rheumatoid arthritis, cerebral visual impairment ("CVI"), speech and language disorder, cerebral palsy, hypothyroidism, short stature, and nocturnal enuresis.  *Id.* ¶ 10.

On July 14, 2014, the Parents filed a request for a due process hearing on behalf of I.J., *see* Administrative Record ("Record"), Vol I. at 1-9, stating, in relevant part, that:

1.      Through June 2013, I.J. was educated at District elementary schools, with the exception of a summer 2008 placement in an eight-week program at the Margaret Murphy Center for Children ("MMCC") in Auburn, paid for by the Parents. *See id.* at 3-5.

2.      On June 4, 2013, I.J.'s Individualized Education Program ("IEP") team in Portland placed her at MMCC for an Extended School Year ("ESY") summer program. *See id*. at 5. As of the date of the due process hearing request, July 14, 2014, I.J. had just completed the sixth grade at MMCC, *see id*. at 2, having been permitted to remain there, pending further evaluation, by agreement of the Parents and the District following the Parents' filing of a due process complaint on November 19, 2013, *see id*. at 6.

3.       Although I.J. thrived at MMCC, the District had continued to insist that she transition to a placement in the Functional Life Skills ("FLS") program at Lyman Moore Middle School ("LMMS"). *See id*. at 5-8.

4.      The Parents "disagree[d] that placement at [LMMS] would be a productive environment for [I.J.] given her unique needs for a low-stimulus, yet interactive, environment." *Id*. at 7. "She need[ed] to continue in the smaller classroom environments at MMCC, which [were] staffed by an in-house BCBA [Board Certified Behavior Analyst] and numerous ABA [Applied Behavioral Analysis]-trained support staff capable of handling any behavioral episodes she [might] experience." *Id*.

The Parents sought, *inter alia*, "an order requiring that [I.J.] continue to be provided with an appropriate program and placement at MMCC, where she ha[d] been receiving highly supported and specialized academic, social, adaptive, visual and behavioral programming, in a controlled and

4

enriching environment with an appropriate peer group, to address her unique educational needs." *Id*. at 8. They invoked their stay-put rights to require her continued placement at MMCC during the pendency of the proceedings. *See id*.

In response to the Parents' July 14, 2014, request, a hearing officer presided over a six-day hearing, held on September 30, October 7, 21, and 29, and November 3 and 7, 2014, at which 10 witnesses testified, including Barbara Ferguson, a teacher of the visually impaired, Seth Vincent, M.S., a BCBA-D at MMCC, Elizabeth Cameron, Psy.D., a BCBA-D at MMCC, Sharon Pray, the District's director of special education, and three members of the team that the District had assembled to serve I.J. at LMMS, psychologists Bruce Chemelski, Ph.D., and Terese Pawletko, Ph.D., and special education teacher Sandra Titcomb. *See id.*, Vol. XXI at 4791, Vol. XXII at 5111.

Ferguson testified that, with regard to I.J.'s visual impairment, LMMS was not an appropriate placement for her, while MMCC was. *See id.*, Vol. XXI at 4938-41. Vincent testified that, given then-recent spikes in I.J.'s behavior, such as disrobing and active refusal, she was not ready to transition from MMCC. *See id.*, Vol. XXII at 4981. Dr. Cameron testified that I.J. had not yet met guidelines developed by MMCC indicating readiness to transition. *See id*. at 5033. Dr. Chemelski testified that, given the program proposed at LMMS for I.J., which was "essentially a day treatment level of service within a public school setting," LMMS was an appropriate placement for her. *Id.* at 5128-29. Dr. Pawletko testified that, from her perspective, there was no reason that I.J.'s behaviors could not be addressed in the LMMS program. *Id*. at 5105. Titcomb disagreed that I.J. was not ready to transition to LMMS, stating that LMMS had "the same programming" for I.J. as MMCC and that, while the transition might lead to a spike in her behaviors, "we can meet her needs and I think with moving forward, putting her in a restrictive

setting to then to a least restrictive setting, we have that availability where [MMCC] doesn't have that availability to put her to a least restrictive setting." *Id.*, Vol. XXIII at 5210.

The hearing officer issued a decision dated December 13, 2014, in which she found, in relevant part, that the District's proposed 2014-15 IEP and placement were reasonably calculated to provide I.J. a FAPE [free appropriate public education]. *See id.*, Vol. XXI at 4827, 4829-32. She noted that there was no dispute about the content of the IEP but, rather, whether it could be implemented in such a manner as to provide a FAPE to I.J. at LMMC. *See id.* at 4827-28.  She stated:

> The IEP calls for the Student to receive specialized instruction for all of her school day.  Her teacher at LMMS would be Sandra Titcomb, a Masters level special education teacher who has considerable experience working with students with Autism and other behavior challenges, and who has completed all of the requirements to become a BCBA except for passing the licensing exam.  As she would not be the Student's BCBA, passing the exam is not relevant, but her BCBA training is.[1]  Ms. Titcomb would have a very small caseload of two students, and would be assisted by an experienced ed tech.  The Student would receive some of her direct instruction from a certified teacher, in contrast to MMCC, where all direct instruction is done by ed techs.
>
> The District has put together an excellent team, both clinical and otherwise, at LMMS to provide the Student with all of the services called for in her IEP.  Barbara Ferguson would continue to be the Student's TVI [teacher of the visually impaired], and Mark Hammond would consult on augmentative communication and communication devices.  The psychology services provided at LMMS would be hard to surpass.  Both psychologists, Dr. Pawletko and Dr. Chem[]elski, are very highly respected, and Dr. Pawletko is renowned for her experience in working with visually impaired children with Autism.
>
> There was no dispute that the Student would likely have some difficulty with the transition to any new school, but the transition plan approved by the IEP team addresses this.  Both Dr. Chem[]elski and Dr. Pawletko drafted the plan, with input from the IEP team, and both testified that the transition and placement could satisfactorily occur, and that the plan was appropriate for the Student's transition.  The Mother and MMCC staff preferred that the Student remain at MMCC and did not feel she was ready to leave that school, although she made progress on almost all of the behavioral goals which formed the basis of her attendance there in the

---

[1] The hearing officer noted that I.J. was to receive 40 hours of BCBA services per quarter from Devin Mulcunry, who is Board certified.  *See* Record, Vol. XXI, at 4830 n.11.

first place.  The rest of the team concluded that the Student could satisfactorily transition into the FLS day treatment program at LMMS under the approved IEP, BIP,[2] and transition plan once all of the elements were in place.  There was no evidence that the transition plan was inappropriate or inadequate.

Both the IDEA and Maine regulations require that students must be educated to the maximum extent appropriate with children who are not disabled . . . .

LMMS is a less restrictive placement than MMCC.  The FLS program at LMMS is a day treatment program within a public school where the Student, when appropriate, will have the opportunity to interact with typically developing peers. She does not have that opportunity at MMCC.  During the hearing, there was considerable evidence of how very social the Student is and how much she enjoyed spending time with her mainstream peers.  She needs a balance between healthy social interaction and concentrated learning time without distractions, and the FLS program at LMMS can provide that. . . .

The Parents have been very happy with the Student's placement at MMCC, and there is evidence that the Student has had a good experience there.  They argue that MMCC is a better program for the Student's profile.  Even if I were to conclude that MMCC were a superior program, an issue that I need not reach, Portland has essentially recreated the substantive elements of the Student's MMCC program in a school in the Student's town, and that is where the law requires her to be educated under the IDEA. . . .

Lastly, the Parents argue that the District is not ready to receive the Student.  The District has the staff and almost every element, aside from a few classroom items that can easily be obtained by the District, such as a rug and white noise machine. . . .

*Id*. at 4829-31 (citations and footnotes omitted).  The hearing officer ordered that, "[w]hen all of

the elements of [the LMMS] program are in place, the Student shall transition from her current

placement at MMCC to LMMS in accordance with the transition plan approved by the IEP team."

*Id*. at 4835.

In her December 1, 2014, report, Heald stated that Pray and Student X's parents had

"agreed to have an independent evaluator observe both Portland's proposed educational setting

and [MMCC's] existing program in an effort to determine if the public school has comparable

---

[2] I am unable to find a definition of this term in the decision; however, nothing turns on it.

supports, services and settings to MMCC for [Student X] to return to her community school at [LMMS]." Heald Report at 1. Heald noted that, to answer that question, she had reviewed seven programmatic areas: student educational/clinical needs analysis; educational setting and environmental factors; staff qualifications and training; supervisory staff supports, experience, and systems of oversight; educational methodologies; assessment tools; and data collection and analysis. *See id.* After addressing each area in detail, she concluded:

> Based on educational file review, interview, observation and consideration of best practice, . . . [LMMS] does not currently have a comparable program to [Student X's] existing program at [MMCC]. It was clear throughout observations and interviews at both locations that there are staff within the two schools that are eager and dedicated to providing the best program for [Student X]. The teachers at [LMMS] demonstrated a receptive, professional and hard-working attitude. While their efforts are well-intentioned and motivated, the existing program does not meet the current level of an ABA intensive program. While the existing life skills program does adopt some ABA principles and methods, it still does not consistently and thoroughly meet all seven dimensions. Based on observations and interview, it seems the proposed program centers around particular personnel rather than an established program, which leaves concern for the fidelity of implementation in the absence of the key assigned staff.

*Id.* at 13-14.

The Parents contend that the Heald Report undercuts the accuracy of several of the hearing officer's conclusions in ruling that the LMMS placement offered I.J. a FAPE: that the LMMS placement had "the substantive elements of the Student's MMCC program in the Student's town" and that "[t]he District ha[d] put together an excellent team, both clinical and otherwise, at LMMS[,]" led by a teacher with "considerable experience working with students with Autism and other behavior challenges." Motion at 7 (quoting Record, Vol. XXI at 4829-30, 4832) (footnotes omitted).

### III. Discussion

The Parents, as the parties seeking to supplement the administrative record, bear the burden of showing "solid justification" for the requested supplementation. *Roland M.,* 910 F.2d at 996. For several reasons, they fall short of doing so.

First, the Parents fail to make a persuasive case that the Heald Report is relevant. As the District observes, *see* Objection at 5-6, the report was prepared to assess the appropriateness of each of the MMCC and LMMS placements for a different child, Student X. On the showing made, it simply is not clear that the needs of Student X and I.J. are comparable or that each was to receive the same level of support and instruction from the same personnel.[3] The Parents' failure to demonstrate the report's relevance is, in itself, a sufficient basis on which to deny the Motion. *See, e.g., Mr. & Mrs. Doe v. Cape Elizabeth Sch. Dep't,* No. 2:13-cv-407-JDL, 2014 WL 2968111, at *2 (D. Me. June 30, 2014) (denying motion to supplement record in IDEA case to the extent that the proffered evidence addressed a concern that was not relevant to the proceeding).[4]

Second, as the District points out, *see* Objection at 7-8, courts must proceed cautiously in permitting the supplementation of an IDEA record with expert testimony. "The valuation of expert testimony is precisely the sort of first-instance administrative determination that is entitled to

---

[3] The Parents assert that Student X and I.J. would have been classmates at the proposed placement at LMMS and were assigned to the same teacher, and that any suggestion by the District that this was not the proposal is disingenuous. *See* Reply at 4 & n.5. Yet, as noted above, the Parents have the burden of demonstrating solid justification for the supplementation. The Parents point out that the record indicates that another child was to share the small classroom with I.J. *Id.* However, the cited record page does not make clear that this child was Student X. *See* Record, Vol. XXIII at 5271. In any event, even if it did, that would not demonstrate that these students' needs and programming were comparable and that the Heald Report applies uniformly to the suitability of the placements for both.

[4] The Parents point out that, in *Eschenasy v. New York City Dep't of Educ.,* 604 F. Supp.2d 639 (S.D.N.Y. 2009), the United States District Court for the Southern District of New York permitted supplementation of the record with evidence directly contradicting the defendant's argument that the student had been able to obtain passing grades despite her emotional problems, even though the evidence predated the administrative hearing and could have been introduced in that proceeding. *See* Reply at 4; *Eschenasy,* 604 F. Supp.2d at 649. *Eschenasy* is distinguishable in that, there, the supplemental evidence documented an important fact regarding the student at issue.

judicial deference by the district court." *Sebastian M. v. King Philip Reg'l Sch. Dist.*, 685 F.3d 79, 86 (1st Cir. 2012).

The First Circuit has acknowledged that "[t]here could be some valid reasons for not presenting some or all expert testimony before the state agency[,]" for example, "[e]xperts are expensive – the parties at the state level may feel that their cases can be adequately made with less backup, especially since the administrative hearing in Massachusetts is conducted by an expert." *Burlington*, 736 F.2d at 791.  However, it has cautioned that, in ruling on motions to supplement an IDEA administrative record, "a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Id.*

Even assuming that some portions of the Heald Report might have a bearing on I.J.'s situation, the proffer of an expert's opinion as to the appropriateness of the two placements at issue for *a different child*, in circumstances in which the hearing officer considered and weighed conflicting expert testimony addressing the appropriateness of those two placements for *this child*, is insufficiently weighty to tip the scales in favor of allowing the introduction of a new expert opinion for the first time on judicial review.

Third, even assuming the relevance of some portions of the Heald Report, I do not see how, as the Parents request, *see* Reply at 5, I could admit it without permitting the District the opportunity to cross-examine Heald or depose the witnesses whose testimony the Parents claim is impeached.  Yet, permitting such cross-examination would raise troubling issues, counseling against the grant of the Motion.

As the District argues, the Parents "presume[] the accuracy of the report without providing the District with an opportunity to cross-examine the report's author, a right otherwise accorded the school under the IDEA."  Objection at 8 (footnote omitted); 34 C.F.R. § 300.512(a)(2) (parties to administrative hearings on IDEA due process complaints have the right, *inter alia*, to confront and cross-examine witnesses).  The District plausibly contends that "it would be particularly difficult even to respond to the report given the uncertainties about just what the evaluator is asserting that could in some manner be relevant to the case at bar."  Objection at 7 n.2.  The District also suggests, *see id*. at 7, and it stands to reason in view of the fact that the report was prepared for a different child, that questioning of Heald and the hearing witnesses whose testimony is at issue might reveal that at least some claimed inconsistencies between the report and the relevant hearing testimony are reconcilable.[5]

As the District further observes, *see id.* at 8 n.3, permitting cross-examination of Heald would be problematic because it would presumably require the disclosure of personal information of Student X and possibly that of other students in the LMMS program.  The Family Educational Rights and Privacy Act bars funding for educational agencies that permit the release, absent written parental consent, of personally identifiable information in a student's educational record, *see* 20 U.S.C. § 1232g(b)(1), and the Health Insurance Portability and Accountability Act penalizes the unauthorized disclosure of personally identifiable information contained in health records, *see* 42 U.S.C. § 1320d-6.

---

[5] For example, the Parents argue that the Heald Report rebuts testimony of teacher Sandra Titcomb at hearing that she was "very familiar" with the data collection methods and the discrete trial training used by MMCC.  Motion at 5. They point to Heald's finding that "[t]o date, the proposed direct staff, who has 12 years of experience in the district, has not received any formal training on discrete trial teaching, autism spectrum disorders, verbal behavior, [Student X's] Dynavox or some of the other necessary components of [Student X's] program and ABA programming."  *Id.*; Heald Report at 10-11.  But, as the District points out, *see* Objection at 7 n.2, it is not clear from the face of the report which teacher Heald is discussing, *see* Heald Report at 10-11.  In any event, Titcomb was hired to serve as I.J.'s special education teacher, not to provide the BCBA services prescribed by I.J.'s IEP.  *See* Objection at 7 n.2; Record, Vol. XXIII at 5201.

The Parents represent that they received permission from Student X's parents to use the redacted report in these proceedings and that Student X's parents waived any confidentiality in the unredacted portions of the report.  *See* Reply at 4 n.5.  Yet, the Parents do not say that Student X's parents authorized anything further, including discussion of Student X on cross-examination of Heald.  *See id*.  Tellingly, they object to the District's request to conduct any depositions regarding the report.  *See id*. at 5.[6]

### IV.  Conclusion

For the foregoing reasons, the Motion is ***DENIED***.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 30th day of December, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The Parents argue that no rebuttal testimony is necessary because the District had the opportunity to address the qualifications and training of its LMMS staff at the hearing and because the report "amounts to an admission by an agent hired by Portland that some of the evidence Portland introduced in the administrative proceedings was not accurately portrayed to the hearing officer."  Reply at 5; *see also id*. at 3 n.3 (citing Fed. R. Evid. 801(d)(2)(C)-(D)). While the District had the opportunity to address the training and qualifications of its staff, it has not had the opportunity to address the points made in the Heald Report that the Parents say undermine the hearing officer's decision.  The Parents raise their Rule 801(d)(2) argument for the first time in their reply brief, which cuts against its consideration.  *See, e.g., In re One Bancorp Sec. Litig.,* 134 F.R.D. 4, 10 n. 5 (D. Me. 1991) (court generally will not address an argument advanced for the first time in a reply memorandum).  In any event, assuming that Heald acted as the District's "agent," the Parents do not explain how she was "authorized to make a statement on the subject" of either I.J.'s placement or placements in MMCC *versus* LMMS generally, or how either of those subjects was "a matter within the scope of [Heald's] relationship [with the District.]"  Fed. R. Evid. 801(d)(2)(C)-(D).